UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TODD KEVIN OSCEOLA and
JESSICA OSCEOLA,

    Plaintiffs,

v.                                         Case No.: 2:24-cv-1131-SPC-DNF

THOMAS FORSYTH, PEDRO
RAMOS, and U.S. DEPARTMENT
OF THE INTERIOR NATIONAL
PARK SERVICE,

    Defendants.

## OPINION AND ORDER

Before the Court is Defendants Thomas Forsyth, Pedro Ramos, and the United States National Park Service's Motion to Dismiss. (Doc. 24). Plaintiffs Todd Kevin Osceola and Jessica Osceola responded (Doc. 35). For the below reasons, the Court grants the motion.

This appears to be an action under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) and its progeny involving a land dispute.[1] The amended complaint's sloppiness makes it difficult to discern

---

[1] The Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to" Plaintiffs. *Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009). That said, "legal conclusions without adequate factual support are entitled to no assumption of truth[.]" *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (cleaned up).

exactly what this case entails.[2] As best the Court can discern, Plaintiffs are members of the Seminole Indian Tribe and owners of a parcel of land located on the Big Cypress National Preserve. Defendants are the United States Department of the Interior National Park Service (a federal agency) ("National Park Service"), Thomas Forsyth (a superintendent of the National Park Service and current superintendent of Big Cypress National Preserve) and Pedro Ramos (a former Superintendent of Big Cypress National Preserve who oversees the four National Park Service units) (collectively, "Defendants"). Although Forsyth and Ramos appear to be federal agents, Plaintiffs allege they acted "under color of federal *and state* law" (Doc. 21 ¶ 9 (emphasis added)) without any clarification.

For years, Plaintiffs wrote letters and issued phone calls criticizing Defendants. No other context for these criticisms is alleged. Then, on a date not specified, Plaintiffs "were informed that their land was to be confiscated by authorities." (*Id.* ¶ 25). Who provided this information to Plaintiffs is a mystery. Plaintiffs also "were ordered to vacate the property by officials from the relevant authorities." (*Id.* ¶ 26). Who gave this order and who the "relevant authorities" are is also a mystery. Ramos and Forsyth harassed

---

[2] Notably, Plaintiffs are represented by counsel.

Plaintiffs, including threatening to seize their property, demolish Plaintiffs' residence and trailer, and bill Plaintiffs for the cost of the demolition.

The amended complaint includes a variety of other information, the relevance of which is entirely unclear. For instance, it mentions that: a septic tank was installed on the property before Plaintiffs occupied it; Plaintiffs never damaged the property or any native trees; the National Park Service facilitated installation of utility services on the property and consented to electrical use; the property is located on high land; the property includes a pre-existing foundation installed by the Brown family (whoever that is); and Plaintiff Todd Kevin Osceola is working to rehabilitate the Kale House and establish a Florida Seminole Native American Museum. (*Id.* ¶¶ 39–53). It also includes several paragraphs reciting various legal authorities and offering legal conclusions. (*Id.* ¶¶ 54–62). For good measure, Plaintiffs allege Defendants violated the Fourteenth Amendment's Equal Protection Clause "by not engaging in the same harassment and taking of property to non-Indian Americans" (*id.* ¶ 62), but they do not actually assert a Fourteenth Amendment claim.[3]

Turning to the individual claims—which are just as confusing (if not more so). In count I, Plaintiffs bring a claim under the Fifth Amendment

---

[3] Never mind that the Fourteenth Amendment applies to the states, and Defendants appear to be a federal agency and agents.

3

Takings Clause. It says Defendant's (singular) actions constituted a seizure of Plaintiffs' property without just compensation. (*Id.* ¶ 64). That's it. It does not say which Defendant or what actions violated the Fifth Amendment. And, conspicuously, Plaintiffs never allege anyone ever actually seized their property. They allege some unknown authority ordered them to vacate their property. But who gave this order and whether Plaintiffs ever actually vacated the land is unknown. Indeed, the only actions by any Defendant that Plaintiffs identify is Forsyth's and Ramos' purported harassment. For all the Court knows, Plaintiffs reside on their property to this day.

Moving to count II, the Court cannot make heads or tails of it. It is titled "DECLARATORY ACTION – VIOLATION OF PUBLIC LAW FLORIDA STATUTE 285.07."[4] But Plaintiffs never indicate what declaration they are seeking. Instead, the amended complaint states the National Park Service "erroneously obstructed the Plaintiff's [sic] access to and use of his [sic] property located at the Indian Village." (*Id.* ¶ 69). There are multiple problems here.

To begin, what conduct obstructed Plaintiffs' access to their property? The Court has no clue because Plaintiffs have not alleged any. What's more,

---

[4] This section explains that the statute's purpose "is to protect the Seminole Indians of Florida against undue and unnecessary hardships during these difficult years of transition from their ancestral culture to the culture of the white person's civilization and to aid said Indians to obtain economic independence as a tribe and as individuals." Fla. Stat. § 285.07.

4

Plaintiffs do not allege facts suggesting an ongoing dispute such that declaratory relief is appropriate. *See Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014) ("Where the plaintiff seeks declaratory or injunctive relief, as opposed to damages for injuries already suffered . . . the injury-in-fact requirement insists that a plaintiff allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." (citation omitted)). So the Court dismisses count II without prejudice.

Count III, titled "DECLARATORY ACTION – VIOLATION OF PUBLIC LAW 93-440"[5] is worse. In it, Plaintiffs simply give a history of the law and their property and then assert the statute "was designed to protect the property interests of the plaintiffs, and its violations have caused the Plaintiff[s] damages." (Doc. 21 ¶ 71–74). Plaintiffs do not bother explaining which Defendants violated this statute or how it was violated. And, like the last claim, it does not appear there is an ongoing controversy for the Court to resolve, as opposed to a claim for a prior injury. So Plaintiffs have not shown declaratory relief is appropriate. The Court dismisses this claim without prejudice as well.[6]

---

[5] This law, codified at 16 U.S.C. § 698j, provides that "members of the Miccosukee Tribe of Indians of Florida and members of the Seminole Tribe of Florida shall be permitted, subject to reasonable regulations established by the Secretary, to continue their usual and customary use and occupancy of Federal or federally acquired lands and waters within the preserve[.]"

[6] Defendants broadly argue that neither Fla. Stat. § 285.07 nor 16 U.S.C. § 698j provide a private cause of action. (Doc. 24 at 14). But that is all they say on the topic. They provide

In count IV, Plaintiffs allege a violation of their Fourth Amendment rights. This claim is perplexing for multiple reasons. First, they allege "Defendants" (presumably all three) were acting under color of *state* law. (Doc. 21 ¶ 76). This is difficult to comprehend given the National Park Service is a federal agency, and Forsyth and Ramos work for this federal agency. Even more peculiar is Plaintiffs' allegation that Forsyth and Ramos "unlawfully deprived Plaintiffs of their property without due process of law" and that "Defendant" (singular and unknown which one) "made an unreasonable search and seizure of Plaintiff's property in violation of the Fourth Amendment." (*Id.* ¶ 78). Again, a multitude of problems here.

The Court starts with the obvious problem: the Fourth Amendment does not contain a due-process clause. So Plaintiffs' assertion that Defendant(s) violated the Fourth Amendment by taking their property without due process is confusing. And, as discussed throughout, Plaintiffs never allege any purported seizure by any Defendant. What's more, at no point do Plaintiffs allege any facts suggesting this is a Fourth Amendment case. As best the Court has been able to surmise to this point, this case is about someone (no one knows who) taking Plaintiffs' property through eminent domain. There is no indication Plaintiffs' property was seized pursuant to some federal (or state,

---

no citation to authority or any other analysis. That said, Plaintiffs offer nothing to the contrary. The parties must rectify this shortcoming next time around.

apparently) police power. *Cf. Almond v. Randolph Cnty., Ala.*, No. 3:19-CV-175-RAH, 2020 WL 3052223, at *11 (M.D. Ala. June 8, 2020) (collecting cases and distinguishing seizures under the Fourth Amendment and the Fifth Amendment's takings clause); *see also Hudson v. Palmer*, 468 U.S. 517, 537–39 (1984) (O'Connor, J., concurring) (distinguishing takings under the Fourth and Fifth Amendments). So count IV is dismissed without prejudice.

In count V, Plaintiffs bring a First Amendment retaliation claim against all three Defendants. The claim allocates several paragraphs to describing the First Amendment and the rights it provides. It otherwise broadly asserts that Defendants violated Plaintiffs' First Amendment rights "by targeting them and harassing them and illegally seizing their land prohibiting plaintiffs from and making exercising their constitutional rights to free speech and expression and retaliating against them." (Doc. 21 ¶¶ 80–94). Several problems here, too.

The first problem is—as already explained—Plaintiffs allege no facts suggesting Defendants seized their land. Nor do Plaintiffs indicate they engaged in protected speech, a necessary element for a retaliation claim. *See O'Boyle v. Sweetapple*, 187 F. Supp. 3d 1365, 1370 (S.D. Fla. 2016) (outlining the elements for a First Amendment retaliation claim). What's more, the Court is confused as to how Defendants' purported seizure of Plaintiffs' land prohibited them from exercising their First Amendment rights. Needless to say, this claim fails and is dismissed without prejudice.

Above all else, Plaintiffs' amended complaint is undoubtedly a shotgun pleading. *See Behr v. Uthmeier*, No. 25-80915-CIV, 2025 WL 2552616, at *1 (S.D. Fla. Sept. 5, 2025) ("Shotgun pleadings are cumbersome, confusing complaints that do not comply with these pleading requirements." (citation omitted)). The amended complaint adopts the allegations of all preceding counts; is replete with conclusory, vague, and immaterial facts; and asserts multiple claims against multiple defendants without specifying which applies to which. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322 (11th Cir. 2015). "Courts in the Eleventh Circuit have little tolerance for shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). And the Court has no tolerance for Plaintiffs' inept pleading. Plaintiffs must do much better than what they provided in the amended complaint.

One more point. Defendants raise a sovereign immunity defense for each count. But Plaintiffs' attempts to rebut it are scant. They simply argue, without citation to any authority, that "Plaintiffs have sued individual officers for constitutional violations, which are not shielded by sovereign immunity[.]" (Doc. 35 at 14). And they claim the two statutory claims "specifically recognize and protect the rights of Seminole Tribe members to occupy and use land in the Preserve." (*Id.*). This does nothing to rebut Defendants' sovereign immunity defense. "A plaintiff bears the burden of showing that the

8

government has waived sovereign immunity at the motion to dismiss stage." *Rebuild Fla., LLC v. United States Dep't of Hous. & Urb. Dev.*, No. 6:21-CV-771-WWB-LHP, 2022 WL 22890214, at *3 (M.D. Fla. Oct. 21, 2022) (citation omitted). So Plaintiffs' briefing also must improve if they want to salvage their claims.[7]

Accordingly, it is now

**ORDERED:**

1. Defendants' Motion to dismiss (Doc. 24) is **GRANTED**.

2. Plaintiffs' amended complaint (Doc. 21) is **DISMISSED without prejudice.**

3. On or before **October 31, 2025**, Plaintiffs may file a second amended complaint. **Failure to do so will cause the Court to dismiss this case without further notice**.

**DONE** and **ORDERED** in Fort Myers, Florida on October 17, 2025.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record

---

[7] The Court has not addressed each of Defendants' arguments for dismissal. But once the Court has a better idea of Plaintiffs' claims, it will be better situated to do so.